IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN JAY PINCUS HUETER, AKA TAO, ET AL., | CIV. NO. 21-00377 JMS-KJM |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 202, 205 & 206 |
| vs. | |
| AST TELECOMM LLC, ET AL. | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 202, 205 & 206

## I. INTRODUCTION

Plaintiffs brought this suit against Defendants[1] under the

Environmental Species Act ("ESA"), the Marine Protection, Research and

Sancturies Act ("MPRSA"), the Comprehensive Environmental Response,

---

[1] There are three sets of Defendants remaining in the case: (1) AST Telecomm LLC (doing business as Bluesky Communications), Chuck Leota, and Fala Sualevai (collectively, "Bluesky Defendants"); (2) American Samoa Power Authority, Wallon Young, Reno Vivao, Ryan Tuatoʻo, Fonoti Perelini, Daniel King, Peter Crispin, Solip Hong, and Isabel Hudson (collectively, "ASPA Defendants"); and (3) American Samoa Telecommunications Authority, Raj Deo, Paul Michael Young, and Justin Tuiasosopo (collectively, "ASTCA Defendants"). The 13 individuals are named in their individual and official capacities, and the Verified Complaint provides American Samoa addresses for each of them.  ECF No. 1 at PageID.1-3, 7-11.

Compensation, and Liability Act of 1980 ("CERCLA"), and American Samoa territorial law regarding a dispute over telecommunications detritus allegedly deposited within the Alega Marine Preserve ("Alega"), a private marine protected area in American Samoa, to the detriment of endangered Hawksbill and Green Sea turtles. *See* ECF No. 1. The ASPA and ASTCA Defendants argue that this court lacks personal jurisdiction over them, and all Defendants argue that the case should be dismissed under the doctrine of forum non conveniens. The court agrees and DISMISSES Plaintiffs' Complaint, ECF No. 1.

## II. <u>BACKGROUND</u>

The jurisdictional issues in this case are complicated by the unique status of American Samoa, which is the only inhabited territory under the jurisdiction of the United States that is both "unincorporated" and "unorganized." The court accordingly begins by providing background on the legal status of American Samoa.

### A.    **Legal Status of American Samoa[2]**

#### 1.    *Governance of American Samoa*

The United States formally annexed American Samoa in 1900. The territory was administered by the United States Navy until 1951, when authority

---

[2] This background section is drawn from this court's order in a related case brought by Plaintiffs that also involved events in American Samoa. *See Hueter v. Kruse*, 576 F. Supp. 3d 743, 753–55 (D. Haw. 2021).

was transferred to the Department of Interior, where it remains today.  *See* Exec.

Order No. 10264 (June 29, 1951).

American Samoa, as well as the United States' other inhabited

territories—Guam, the Commonwealth of the Northern Mariana Islands

("CNMI"), Puerto Rico, and the U.S. Virgin Islands—are considered

"unincorporated" territories.  *See Downes v. Bidwell*, 182 U.S. 244, 279-80 (1901).

This means that the territories are not intended for incorporation into the union as

states; they are instead "possessions"—"belonging to" but "not a part of the United

States."  *See id*. at 279-80, 287.[3]  Because the territories are legally designated

---

[3]  The notion of "unincorporated territories" is grounded in the doctrine of territorial incorporation.  That doctrine "distinguishes between incorporated territories, which are intended for statehood from the time of acquisition [, such as the Northwest Territory,] and in which the entire Constitution applies *ex proprio vigore*, and unincorporated territories, which are not intended for statehood and in which only [certain] fundamental constitutional rights apply by their own force."  *Commonwealth of N. Mariana Islands v. Atalig*, 723 F.2d 682, 688 (9th Cir. 1984).

The doctrine of territorial incorporation was devised by the Supreme Court in a series of cases at the turn of the 20th century commonly known as "the Insular Cases."  The origin of the doctrine is explicitly racist, grounded in the idea that overseas territories were unfit to become fully integrated into the United States because island peoples were "savage" and "different" from Anglo-Americans.  For similar reasons, the Court determined that these "alien races" were not fit to enjoy the full protections of the U.S. Constitution.  *See Downes*, 182 U.S. at 279, 287 (reasoning that Puerto Rico could "belong [] to the United States, but not [be] a part of the United States within the revenue clauses of the Constitution," because its "alien races" were so incongruous with "Anglo-Saxon principles" that "the administration of government and justice . . . may for a time be impossible.").  Rather, beyond the most fundamental of rights, it would be left to Congress to determine which provisions of the Constitution applied in these territories.  *Id.* at 268.  Despite the shameful genesis of this doctrine, *see Fitisemanu v. United States*, 1 F.4th 862, 869 (10th Cir. 2021), the Court has continued to apply it on the basis that it would be "impractical" and unnecessary to "extend full constitutional protections to territories the United States did not intend to govern indefinitely," *Boumediene v. Bush*, 553 U.S. 723, 758-60, 768 (2008).

"possessions" of the United States, they are not considered to have independent sovereignty under United States law; instead, they are subject to the plenary power of Congress. *Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 71 (2016). For the same reason, the United States Constitution does not apply in its own force in the territories—save for the most "fundamental" constitutional rights, including those to life, liberty, and property. *Downes*, 182 U.S. at 279, 283. Inhabitants of the territories cannot vote in federal elections, and they have only non-voting representation in Congress. *See* Government Accountability Office, American Samoa: Issues Associated with Some Federal Court Options 4 (2008) (hereinafter "GAO Report").[4]

In contrast, Guam, CNMI, Puerto Rico, and the Virgin Islands are considered "organized" territories—meaning Congress has enacted legislation that establishes and delegates certain authority to civilian governments in each of these territories, including executive, legislative, and judicial branches. *See, e.g.*, 48 U.S.C. § 1421 (Guam); 48 U.S.C. § 1801 (CNMI); 48 U.S.C. § 1541 (Virgin Islands); 48 U.S.C. § 731 (Puerto Rico). These legislative acts also make most inhabitants of these territories U.S. citizens and extend most provisions of the United States Constitution to the territories. *See, e.g.*, *Davis v. Guam*, 2017 WL

---

[4] The GAO Report was prepared for Congress to address "American Samoa's system for addressing matters of federal law." GAO Report at prefatory "Highlights" page ("Why GAO Did This Study").

930825, at *12 (D. Guam Mar. 8, 2017), *aff'd*, 932 F.3d 822 (9th Cir. 2019) (citing 48 U.S.C. § 1421b(u)).

Congress has never enacted comparable legislation for American Samoa, making American Samoa the only inhabited territory that remains "unorganized." *See Fitisemanu v. United States*, 1 F.4th 862, 875 n.15 (10th Cir. 2021). Consequently, inhabitants of American Samoa are not U.S. citizens, but U.S. nationals. *Tuaua v. United States*, 788 F.3d 300, 301 (D.C. Cir. 2015) ("*Tuaua II*"). Further, because Congress has not extended any provisions of the U.S. Constitution to the territory, inhabitants of American Samoa are "entitled under the principles of the Constitution to be protected in life, liberty, and property . . . [but they are] not possessed of the political rights of citizens of the United States." *Id*. at 308 (quoting *Downes*, 182 U.S. at 283).[5] And, most significantly for present purposes, Congress has not created or delegated authority to a territorial government in American Samoa. *Fitisemanu*, 1 F.4th at 875 n.15 (stating that

---

[5] Representatives of the Government of American Samoa tend to oppose further application of the United States Constitution to American Samoa, noting that U.S. constitutional principles could disrupt the Samoan way of life, especially with respect to communal land tenure. *Tuaua II*, 788 F.3d at 309-10; *see also Fitisemanu*, 1 F.4th at 870, 880 (noting that "[c]onstitutional provisions such as the Equal Protection Clause, the Takings Clause, and the Establishment Clause are difficult to reconcile with several traditional American Samoan practices, such as the matai chieftain social structure, communal land ownership, and communal regulation of religious practice" and suggesting that "[n]otwithstanding its beginnings, the approach developed in the Insular Cases and carried forward in recent Supreme Court decisions can be repurposed to preserve the dignity and autonomy of the peoples of America's overseas territories.").

absent organizing legislation, American Samoa is "especially subject to American political control"). Instead, American Samoa remains under the "plenary authority" of the Secretary of the Interior. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Hodel*, 830 F.2d 374, 375 (D.C. Cir. 1987) ("*Hodel II*"); Exec. Order. 10264 (vesting the Secretary of the Interior with "all civil, judicial, and military powers" of government in American Samoa).

The people of American Samoa adopted their own Constitution by referendum, which was approved by the Secretary of the Interior in 1967. *See Tuaua v. United States*, 951 F. Supp. 2d 88, 90 (D.D.C. 2013). In 1977, the Secretary permitted the governor to be selected by popular vote. *Id.* And in 1983, Congress passed legislation specifying that any amendment or modification to the constitution of American Samoa, "as approved by the Secretary of the Interior . . . may be made only by an Act of Congress." 48 U.S.C. § 1662a.

### 2. *American Samoa Judicial System*

American Samoa's unique status as an unorganized, unincorporated territory also creates peculiarities in the territory's judicial system. American Samoa's judiciary consists of a district court and a High Court. Am. Samoa Const. art. III, § 1; Am. Samoa Code ("ASC") tit. 3. The district court adjudicates minor civil cases, such as small claims, and minor criminal offenses, such as traffic violations. The High Court, meanwhile, consists of four divisions—the Trial

Division; the Land and Titles Division; the Family, Drug, and Alcohol Division; and the Appellate Division. ASC §§ 3.0207, 3.0501. The Family, Drug, and Alcohol Division has jurisdiction over "all matters affecting families, from juvenile offenses to domestic violence and adoptions to divorce and child support." *Id.* § 3.0501. The Land and Titles Division has exclusive jurisdiction over all controversies related to land. *Id.* § 3.0208(b). The Trial Division is a court of "general jurisdiction" with "the power to hear any matter not otherwise provided for by statute." *Id.* § 3.0208(a). And the Appellate Division "shall have jurisdiction to review, on appeal, final decisions of the trial and land and titles divisions of the High Court," as well as certain decisions of the district court and certain administrative proceedings. *Id.* § 3.0208(c).

The entire territorial court system is "under the administration and supervision" of a Chief Justice. *Id.* § 3.0102. The Chief Justice sits on the High Court along with an Associate Justice and a number of Associate Judges. The Chief Justice and Associate Justice are law-trained. *Id.* § 3.1001(a). The Associate Judges are not required to have legal training but are instead "appointed based on their knowledge of Samoan culture and tradition." GAO Report at 24.

The judicial branch, like the rest of American Samoa's government, is under the plenary authority of the Secretary of the Interior. As such, the Secretary of the Interior "appoint[s] a Chief Justice of American Samoa and such Associate

Justices as he may deem necessary" and may remove them for cause.  Am. Sam. Const. art. III, § 3; ASC § 3.1001(b).  The Associate Judges, meanwhile, are appointed by the Governor of American Samoa, ASC § 3.1004(a), although such executive branch decisions are also subject to veto by the Secretary of the Interior. Litigants have no right to file a petition for writ of certiorari in the U.S. Supreme Court after receiving an adverse decision from an American Samoa court; instead, litigants may only appeal to the Secretary of the Interior, who has the authority to overturn High Court decisions.  GAO Report at 11; *see also* Michael W. Weaver, *The Territory Federal Jurisdiction Forgot*, 17 Pac. Rim L. & Pol'y J. 325, 325 (2008).  In contrast, in the organized territories (e.g., Guam, CNMI), Congress has provided litigants the right to file a petition for writ of certiorari in the U.S. Supreme Court challenging a final judgment of the highest territorial court.  *See* GAO Report at 11.

Unlike the organized territories, American Samoa does not have a federal court and is not part of a federal judicial district.  The High Court Trial Division has been expressly delegated authority to hear certain claims ordinarily under exclusive federal jurisdiction, including admiralty and maritime matters, but otherwise there is no court in the territory with subject-matter jurisdiction over questions of exclusively federal law.  *See* ASC § 3.0208(a); GAO Report at 2.

### B.    Factual Background

#### 1.    *Parties*

Plaintiffs Steven Jay Pincus Hueter (pro se), Faʻamuli Pete Faʻamuli, and Michael "Candyman" Kirk (pro se) (collectively, "Plaintiffs")[6] are residents of Alega Village, American Samoa.  ECF No. 1 at PageID.6.  Plaintiffs are all officers of the Alega Preservation Institute, a 501(c)(3) public charity responsible for stewardship of the Alega Marine and Wildlife Sanctuary and Reserve, a private marine reserve in Alega Village.  *Id.*  Plaintiff Faʻamuli Pete Faʻamuli is also the SaʻO (Chief) of Alega Village.  *Id.*

Defendant AST Telecom, also known as Bluesky Communications, has its principal place of business in Pago Pago, American Samoa.  *Id.* at PageID.7.  Defendants Raj Deo (former CEO), Paul Michael Young (former COO), and Justin Tuiasosopo (current CEO), all reside in American Samoa and have been sued in their individual and official capacities.  *Id.* at PageID.7–8.

Defendant American Samoa Telecommunications Authority is based in Tafuna, American Samoa.  *Id.* at PageID.9.  Defendants Chuck Leota (former CEO) and Fala Sualevai (former CEO), all reside in American Samoa and have also been sued in their individual and official capacities.  *Id.* at PageID.9–10.

---

[6]  When the action was originally filed, Faʻamuli was also proceeding pro se.  On December 17, 2021, however, attorney Bentley C. Adams, III entered an appearance on behalf of Faʻamuli.  *See* ECF No. 142.

Defendant American Samoa Power Authority ("ASPA") is based in Pago Pago, American Samoa.  Defendants Wallon Young (Executive Director), Reno Vivao (COO), Ryan Tuato'o (Customer Service Manager), Fonoti Perlini (Board of Directors member), Daniel King (Board of Directors member), Peter Crispin (Board of Directors member), Solip Hong (Board of Directors member), and Isabel Hudson (Board of Directors member) all reside in American Samoa and have been sued in their individual and official capacities.  *Id.* at PageID.9–12.

The suit also named several other Defendants from the United States government, the American Samoa government, and individuals Lealaialoa Fritz Michael Kruse and James L. Mcguire.  *Id.* at PageID.11–17.  Those Defendants are no longer part of the case.  *See* ECF No. 174.

### 2.   *ESA Claim*

Plaintiffs bring suit under the ESA, 16 U.S.C. §§ 1531–1544. Plaintiffs claim that Defendants harmed the Green Turtle species (*Chelonia mydas Linnaeus*) and the endangered Hawkbill Turtle species (*Eretmochelys imbricata Linnaeus*) on "the water and land of the Alega Private Marine Protected Area in American Samoa, which Plaintiffs manage and own in part."  ECF No. 1 at PageID.18.  According to the Complaint,

> Alega Private Marine Reserve is located in the southeast
> of Tutuila in Alega Bay and extends from Vaiola Point to
> Tifa Point (Figure 5.4).  It was initiated by Tisa Fa'amuli

10

> in 1985 to protect the coral reef ecosystem in Alega Bay
> from overfishing and other destructive practices.

ECF No.1 at PageID.30.

Bluesky and ASTCA were FCC-licensed common carriers that

provided telecommunication services—while ASPA provided electrical power—to

residents of American Samoa, and Defendants allegedly injured Plaintiffs by:

> Improperly leaving hazardous, unused, cable-related
> material and debris and pollution on Plaintiffs' trees, on
> Plaintiffs' land and water, and on the official private
> Alega Marine and Wildlife Sanctuary and Reserve, and
> on the land and water of the private Alega Marine
> Protected Area in Alega Bay and polluting the
> endangered and threatened species habitat in the private
> Alega Marine Protected Area.

ECF No.1 at PageID.37.

## C.      Procedural Background

On September 8, 2021, Plaintiffs filed their Complaint "For Violation

of Federal Pollution Laws and For Violation of Federal Environmental Protection

Laws and for Violation of Federal Endangered Species Protection Laws and For

Violation of Federal Marine Sanctuary Protection Laws and for Injunctive Relief

and for Declaratory Relief and Judgment and For Other Relief Relating to a Private

Alega Marine Protected Area Established in ~1985."  ECF No. 1.

On March 29, 2022, the court dismissed the named (1) federal

defendants, (2) American Samoa government defendants, and (3) Defendants

McGuire and Kruse.  ECF No. 174.  After that Order, the remaining Defendants

were the Bluesky Defendants, the ASPA Defendants, and the ASTCA Defendants.

And due to ongoing settlement discussions, on March 31, 2022, the court

terminated without prejudice the then-pending motions:  (1) Plaintiff's Motion for

TRO, ECF No. 79, (2) ASPA Defendants' Motion to Dismiss, ECF No. 57, (3)

ASTCA Defendants' Motion to Dismiss, ECF No. 132, (4) Bluesky Defendants'

Counter-Motion to Dismiss, ECF No. 152.  ECF No. 176.

       The parties then engaged in settlement discussions with a Magistrate

Judge.  Defendants conducted "a survey and inspection of the property in question

and prepare[d] a specific proposal to address the removal of the

telecommunications detritus and other materials at issue in this case."  ECF No.

181.  Although settlement discussions continued through the year, the parties were

unable to reach agreement, and they refiled their motions.

       On January 6, 2023, pro se Plaintiff Hueter filed a Motion for

Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction and

Permanent Injunction "to Enjoin Polluting Defendants from Harming the

Survivability of the Endangered Species Green and Hawksbill Turtles in their

Habitat on the Coastline of American Samoa."  ECF No. 199.  And on January 7,

2023, pro se Plaintiff Kirk filed the same motion.  ECF No. 200.  On February 15,

2023, Plaintiff Faamuli filed a Motion for Joinder.  ECF No. 201.  The ASPA,

ASTCA and Bluesky Defendants filed Oppositions to the TRO.  ECF Nos. 210, 211, 212.  And Plaintiffs Faamuli, Hueter, and Kirk filed a Reply.  ECF Nos. 199, 222.

On February 17, 2023, the ASPA and ASTCA Defendants filed their Motions to Dismiss.  ECF No. 202, 205.  The Bluesky Defendants filed a "Partial Substantive Joinder" in both these Motions, but only as to an argument that the case should be dismissed on the basis of forum non conveniens.  ECF No. 206-1 at PageID.2293–294.  The Bluesky Defendants also filed a Motion for Summary Judgment with a corresponding Concise Statement of Facts.  ECF Nos. 203, 204.  Plaintiffs filed and joined the filed Oppositions to the Motions to Dismiss.  ECF Nos. 213, 214, 216, 218.  And Defendants filed Replies.  ECF Nos. 219, 220, and 221.

On May 1, 2023, the court held a Zoom hearing on all the pending Motions.

### III.  <u>STANDARDS OF REVIEW</u>

**A.     Motion to Dismiss for Lack of Personal Jurisdiction**

A federal court's personal jurisdiction may be challenged by motion pursuant to Federal Rule of Civil Procedure 12(b)(2).  To withstand a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdictional facts.  *See In re Boon Global Ltd.*, 923 F.3d 643, 650

(9th Cir. 2019).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)).  "[U]ncontroverted allegations in [the] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor."  *Brayton Purcell*, 606 F.3d at 1127 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)).

## B.  Motion to Dismiss for Forum Non Conveniens

The doctrine of forum non conveniens permits a district court "to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  A party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal.  *Id.*.

Applying this standard, courts treat "forum non conveniens as an exceptional tool to be employed sparingly," and should not "perceive[] it as a

doctrine that compels plaintiffs to choose the optimal forum for their claim."

*Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) . "[A] plaintiff's

choice of forum will not be disturbed unless the 'private interest' and the 'public

interest' factors strongly favor trial in a foreign country." *Lueck*, 236 F.3d at 1145

(citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

## C.    Pro Se Plaintiffs

Because two of the Plaintiffs are proceeding pro se, the court liberally

construes their filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## IV.  <u>ANALYSIS</u>

Plaintiffs sue Defendants under the ESA,[7] the purpose of which is:

> to provide a means whereby the ecosystems upon which
> endangered species and threatened species depend may

---

[7] Plaintiffs also bring suit under the Marine Protection, Research, and Sanctuaries Act ("MPRSA"), 33 U.S.C. § 1401 et seq., also known as the "Ocean Dumping Act."  ECF No. 1 at PageID.17–18.  But the MPRSA has no application to Plaintiffs' claims of shoreside and beach pollution by telecommunications debris.  *Id*. at PageID.20–21.  The Act "covers pollution from vessel beyond territorial seas," which are defined as "the belt of the seas measured from the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters, and extending seaward a distance of three miles." *Pac. Legal Found. v. Quarles*, 440 F. Supp. 316, 318–19 and 319 n.1 (C.D. Cal. 1977) (citing 33 U.S.C. §§ 1411, 1402(f), 1362(8)).  The Complaint does not allege any pollution occurring beyond three miles from the shoreline and, accordingly, fails to state a claim under MPRSA.  Given the allegations in the Complaint, any leave to amend would be futile.

Similarly, Plaintiffs' Complaint makes brief mention of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9602.  *See* ECF No. 1 at PageID.21.  Although Plaintiffs cite this provision, they fail to discuss or analyze it within the body of their Complaint, or explain how CERCLA even applies.  Moreover, Plaintiffs only cite Section 310(a)(2) of the Act which involves "citizen suits" against

(continued . . .)

> be conserved, to provide a program for the conservation
> of such endangered species and threatened species, and to
> take such steps as may be appropriate to achieve the
> purposes of the treaties and conventions set forth
> [here]in[.]

16 U.S.C. § 1531(b).  Plaintiffs may bring a "citizen suit," under the ESA, which

allows a person to commence a civil action "to enjoin any person . . . who is

alleged to be in violation of any provision of this chapter or regulation issued under

the authority thereof."  16 U.S.C. § 1540(g)(1)(A).[8]  In discussing the jurisdiction

of district courts, the ESA further states:

> The several district courts of the United States, including
> the courts enumerated in section 460 of Title 28, shall
> have jurisdiction over any actions arising under this
> chapter.  For the purpose of this chapter, American
> Samoa shall be included within the judicial district of the
> District Court of the United States for the District of
> Hawaii.

16 U.S.C. § 1540(c).

Although it is clear that the ESA provides *subject matter* jurisdiction

for the District of Hawaii to hear claims arising in American Samoa, the ASPA and

---

federal actors of the United States, none of which remains as Defendants in this matter.  *See* ECF
No. 174.  Thus, the Complaint fails to state a claim under CERCLA as well.  The court
DISMISSES, without leave to amend, Plaintiffs claims under both CERCLA and MPRSA, and
only analyzes the Plaintiffs' ESA claim below.

[8]  The ESA also states that "[a]ny suit under this subsection may be brought in the
judicial district in which the violation occurs."  16 U.S.C. § 1540(g)(3)(A).  This provision does
not address in personam jurisdiction; instead, it is a venue provision only.  "Thus, if personal
jurisdiction exists, it must be asserted on the basis of the [applicable] long arm statute."
*Colorado River Water Conservation Dist. v. Andrus*, 476 F. Supp. 966, 968 (D. Colo. 1979).

ASTCA Defendants argue that the court lacks *personal* jurisdiction over them. The court concludes that if Defendants do not have sufficient minimum contacts to Hawaii, it cannot exercise personal jurisdiction over Defendants from American Samoa. Stated differently, § 1540(c) does not confer personal jurisdiction over defendants; it only confers subject matter jurisdiction. And the court also determines that the High Court of American Samoa has concurrent jurisdiction to hear ESA claims. Accordingly, the court GRANTS the ASPA and ASTCA Defendants' Motions to Dismiss for lack of personal jurisdiction.

## A.    Personal Jurisdiction[9]

ASPA and ASTCA Defendants first argue that because they reside in American Samoa and the underlying controversy took place entirely within American Samoa, there are insufficient "minimum contacts" with Hawaii to afford this court personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A). In addition, they argue that the court cannot exercise personal jurisdiction under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2). The court agrees that it lacks personal jurisdiction over these Defendants under both Rules 4(k)(1)(A) and 4(k)(2) and addresses each long-arm statute in turn.

---

[9]  As with some of the background section, much of this personal jurisdiction section draws from similar rulings in this court's Order in *Kruse*, 576 F. Supp. 3d at 765–70.

### 1.      *Rule 4(k)(1)(A)*

"[P]ersonal jurisdiction over a[n out-of-state] defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  In the usual case, the long-arm prong of the inquiry is governed by Federal Rule of Civil Procedure 4(k)(1)(A), which provides that a federal district court may exercise personal jurisdiction if the defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"; that is, if the defendant is subject to personal jurisdiction under that forum state's long-arm statute.  Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, is coextensive with federal due process.  *See, e.g.*, *Venice PI, LLC v. Galbatross Tech., LLP*, 2019 WL 7373024, at *4 (D. Haw. Dec. 31, 2019).  Thus, the personal jurisdiction analysis under the Hawaii long-arm statute collapses into a single due process inquiry.  *Id.*

Due process requires that a nonresident defendant has "'certain minimum contacts' with the forum [state] 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A defendant's minimum contacts can give rise to either general or specific jurisdiction.  *Ayla v. Alya Skin*,

11 F.4th 972, 979 (9th Cir. 2021).  A court may exercise general jurisdiction over a defendant whose connections to the forum are "so continuous and systematic" that the defendant is "essentially at home" there.  *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014).  For example, a court may exercise general jurisdiction over a defendant who resides in the forum state.  *See id.* at 137.  General jurisdiction "permits a court to hear 'any and all claims' against a defendant, whether or not the conduct at issue has any connection to the forum."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

A court may exercise specific jurisdiction in more limited circumstances—when a case "arises out of or relates to the defendant's contacts with the forum."  *Id.*  Whether specific jurisdiction is proper "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (alteration removed) (citation and quotation marks omitted).  In the Ninth Circuit, courts conduct a three-part inquiry to determine whether a non-resident defendant has sufficient "minimum contacts" with the forum to warrant exercise of personal jurisdiction: (1) "the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of

or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Wanat*, 970 F.3d at 1208 (quotation marks omitted).

Here, as the ASPA and ASTCA Defendants rightly assert, the court lacks personal jurisdiction over them under the Hawaii long-arm statute. No Defendant nor any other aspect of this case has any connection whatsoever to Hawaii. The Defendants live and work in American Samoa. Plaintiffs have not alleged that they have directed any activity toward Hawaii. And Plaintiffs' claims arise solely out of conduct that allegedly took place in American Samoa. Simply put, there are no contacts—let alone sufficient minimum contacts—between any of the Defendants and Hawaii to support the court's exercise of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(1)(A).

### 2.   *Rule 4(k)(1)(C)*

Furthermore, Rule 4(k)(1)(C) "establishes personal jurisdiction over a defendant . . . when authorized by statute." At first glance, 16 U.S.C. § 1540(c) might be read as authorizing any and all jurisdiction in the District of Hawaii. But it can only do so for subject matter, not personal, jurisdiction. The ESA cannot abrogate due process requirements in an effort to establish personal jurisdiction. If it did so, it would be infringing upon the due process "minimum contacts" requirement—a constitutional requirement which applies to American Samoa

nationals. *Downes*, 182 U.S. at 279, 283*; see also Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984) ("Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant."); *Silva v. Gonzales*, 2014 WL 12663140, at *8 (S.D. Cal. May 23, 2014) ("Plaintiffs contend that therefore, this Court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(1)(C), which states that service of a summons establishes personal jurisdiction 'when authorized by a federal statute.' These statutes and international treaties, however, do not allow a plaintiff to circumvent Constitutional due process and allow a court to acquire personal jurisdiction over a defendant simply by service of a summons."), *aff'd*, 667 F. App'x 967 (9th Cir. 2016); *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 27 (E.D.N.Y. 2016) ("As such, Rule 4(k)(1)(C) provides an additional basis for this Court to exercise personal jurisdiction over Defendant, to the extent permitted by due process").

Accordingly, this court cannot extend personal jurisdiction under 4(k)(1)(C).[10]

---

[10]  This does not mean, however, that 16 U.S.C. § 1540(c) ("American Samoa shall be included within the judicial district of the District Court of the United States for the District of

(continued . . .)

### 3.   *Rule 4(k)(2)*

The question of whether personal jurisdiction exists under Federal

Rule of Civil Procedure 4(k)(2) is more complicated.  Commonly referred to as the

federal long-arm statute, Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a
> summons or filing a waiver of service establishes
> personal jurisdiction over a defendant if:
>> (A) the defendant is not subject to jurisdiction in
>> any state's courts of general jurisdiction; and
>> (B) exercising jurisdiction is consistent with the
>> United States Constitution and laws.

That is, any district court may exercise personal jurisdiction over a defendant when

"(1) the action arises under federal law, (2) the defendant is not subject to

jurisdiction in any state's courts of general jurisdiction, and (3) the court's exercise

of jurisdiction comports with due process."  *Ayla*, 11 F.4th at 978 (internal

quotation marks omitted).  Here, the first prong is satisfied based on the ESA.  16

U.S.C. § 1531.

As to the second prong, a "defendant who wants to preclude use of

Rule 4(k)(2) has only to name some other state in which the suit could proceed."

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007)

---

Hawaii") is rendered meaningless.  This provision certainly provides the District of Hawaii
subject matter jurisdiction over America Samoa-based ESA claims *if* the American Samoa
Defendants have the required minimum contacts *or* if ESA criminal charges are brought in the
District of Hawaii.  *See United States v. Lee*, 159 F. Supp. 2d 1241, 1247 (D. Haw. 2001).

(quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).  Because Defendants reside in American Samoa and the entirety of the events giving rise to this lawsuit occurred there, the only "state" court that could exercise personal jurisdiction in this case is the High Court of American Samoa. And, indeed, the ASPA and ASTCA Defendants assert that Rule 4(k)(2) is inapplicable here because the High Court Trial Division provides a suitable forum to adjudicate Plaintiffs' ESA claim against them.  *See* ECF No. 205-1 at PageID.2174; ECF No. 202-1 at PageID.2067–68.  The question thus becomes whether the High Court Trial Division is a "state's court[] of general jurisdiction" for purposes of Rule 4(k)(2).

"Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist."  *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414, 1415 (Fed. Cir. 2009) ("The advisory committee was concerned with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States.").  Before Rule 4(k)(2) was enacted, defendants lacking single-state contacts sufficient for personal jurisdiction under a state long-arm statute "but who had enough contacts with the United States as a whole to make personal jurisdiction over them in a United States court constitutional, could evade responsibility for civil violations of federal laws." *United States v. Swiss Am. Bank, Ltd*., 191 F.3d 30, 40 (1st Cir. 1999).  The Rule's

purpose guides the court's analysis as to whether the High Court may be considered a "state's court of general jurisdiction."

In addressing this second prong of the Rule 4(k)(2) test, some courts have considered only whether a state's court of general jurisdiction can exercise personal jurisdiction over the defendants.  *See, e.g.*, *Swiss American Bank, Ltd.*, 191 F.3d at 39 ("[W]e nonetheless consider it pellucid that Rule 4(k)(2)'s reference to defendants who are 'not subject to the jurisdiction . . .' refers to the absence of *personal* jurisdiction."); *see also* 4 Charles A. Wright et al., *Federal Practice and Procedure* § 1068.1 (4th ed. 2015) ("[T]he court [in *Swiss Am. Bank*] correctly held that the absence of subject matter jurisdiction was irrelevant to an inquiry under the negation requirement.  Rule 4(k)(2) was intended only to correct the personal jurisdiction gap discussed in the Supreme Court's opinion in *Omni Capital International v. Rudolf Wolff & Company*[, 484 U.S. 97 (1987),] and the [contrary] interpretation would permit unconstrained forum shopping in cases arising under exclusively federal jurisdiction statutes.").  When considering the "jurisdiction" of a state court, focusing solely on personal jurisdiction is sensible because there is no question that some court in the forum may assume subject-matter jurisdiction over the case.  *See* Erwin Chemerinsky, *Federal Jurisdiction* § 5.1 (8th ed. 2021) ("State judiciaries have general jurisdiction and may therefore

hear all causes of action unless there is a statute denying them subject matter jurisdiction.").

But when applying Rule 4(k)(2) in the unique situation of a federal claim arising in the unorganized, unincorporated territory of American Samoa, an analysis that considers only personal jurisdiction could produce an outcome in which no court has both personal and subject-matter jurisdiction over a federal claim—an outcome at odds with the purpose of Rule 4(k)(2) itself, *see Touchcom*, 574 F.3d at 1414 ("Rule 4(k)(2) closed a loophole" wherein a non-resident defendant "could escape jurisdiction in all fifty states.").  For example, such an outcome would occur for a claim solely arising in American Samoa and for which there is exclusive federal subject matter jurisdiction such as patent infringement under 35 U.S.C. § 271(a).[11]  Although the High Court would have personal jurisdiction over defendants in such a case, it presumably would lack subject matter jurisdiction because it is not a federal district court, but is instead a legislative court with "discrete and limited jurisdiction" over certain federal law claims.  *See Star-Kist Samoa v. M/V Conquest*, 1987 A.M.C. 1967, 1987 WL 1565394, at *1 (High Ct. App. Div. 1987) (explaining that the High Court does not

---

[11]  United States patent law applies to the territories, including American Samoa.  *See* 35 U.S.C. § 100(c) ("The terms 'United States' and 'this country' mean the United States of America, its territories, and possessions."); 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . . For purposes of this subsection, the term 'State' includes . . . , American Samoa, . . . .").

have subject-matter jurisdiction over most questions of exclusive federal law).  In such a case, there would also be no federal district court with personal jurisdiction, because there is no federal district court in American Samoa and American Samoa is not a part of any federal judicial district.  If the sole focus of Rule 4(k)(2) was on the High Court's personal jurisdiction, a Plaintiff bringing certain federal claims arising solely in American Samoa would simply be unable to prosecute those claims in *any* court, whether federal, state, or territorial.[12]  This, obviously, would thwart Congress's intent to ensure that "federal claims will have a U.S. forum if sufficient national contacts exist."  *Touchcom*, 574 F.3d at 1414.

      Thus, in the unique circumstance of American Samoa, the court looks to both personal and subject-matter jurisdiction and asks two questions under the second prong of *Ayla*, 11 F.4th at 978: (1) is the High Court Trial Division a "state's court of general jurisdiction" as contemplated by Rule 4(k)(2)(A); *and* (2) does the High Court Trial Division have jurisdiction—both personal and subject matter—to hear the claim asserted against the defendant.  If the answer to both questions is "yes," Rule 4(k)(2) is inapplicable, and this court does not have jurisdiction via the federal long-arm statute.  This application of Rule 4(k)(2)(A) to American Samoa is consistent with the Ninth Circuit's rule that a party wanting to

---

[12]  And there are likely other situations—besides the example of exclusive federal subject matter jurisdiction—in which claims arising in American Samoa would fall into a jurisdictional neverland if the Rule 4(k)(2) analysis focused solely on personal jurisdiction.

preclude the use of Rule 4(k)(2) "has only to name some other state in which the suit could proceed." *Holland Am. Line*, 485 F.3d at 461.

Turning to the first question, the analysis is muddied from the outset because the High Court of American Samoa is not, literally speaking, a "state's court." In the several states, judicial power flows from the inherent sovereignty of the states themselves and vests state courts with correspondingly inherent authority to exercise broad general jurisdiction, including over claims arising under federal law. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("Under [our] system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."). In contrast, territories are not considered independent sovereigns. *Sanchez Valle*, 579 U.S. at 71. As such, territorial courts do not possess inherent judicial power. Instead, territorial courts were legislatively established by Congress, and it is Congress that determines the scope of their jurisdictional authority. *See, e.g.*, *United States v. Xiaoying Tang Dowai*, 839 F.3d 877, 880–81 (9th Cir. 2016); *Meaamaile v. Am. Samoa*, 550 F. Supp. 1227, 1235 (D. Haw. 1982) ("The courts established for American Samoa are not Article III courts, but, rather, *legislative* courts created by virtue of the general right of sovereignty which exists in the government and by virtue of Article IV, Section 3, Clause 2 of the United States Constitution, which enables Congress to make all

needful rules and regulations respecting the territory belonging to the United States." (emphasis in original)).

Nevertheless, for purposes of Rule 4(k)(2), the court concludes that the High Court Trial Division is properly considered a "state's court of general jurisdiction." Under 48 U.S.C. § 1661(c), sometimes referred to as the "Temporary Organic Act," Congress determined that all judicial power in American Samoa "shall be exercised in such manner as the President of the United States shall direct." In turn, pursuant to Executive Order 10264 and effective July 1, 1951, the President delegated authority to the Secretary of the Interior to "take such action as may be necessary and appropriate, and in harmony with applicable law, for the administration of civil government in American Samoa." Using that authority, the Secretary of the Interior approved the Revised Constitution of American Samoa, which vests judicial power in the High Court, Am. Sam. Const. art. III, § 1, and legislative power in a bicameral legislature, the Fono, *see* Am. Sam. Const. art II, § 1. Thus, "the power which Congress usually delegates to a territorial legislature by means of an organic act, the Secretary of the Interior delegated to the Fono through ratification of the American Samoan Constitution." *Vessel Fijian Swift v. Trial Division*, 4 ASR 983, 988 (1975).

And the Fono (using the authority provided to it through the Revised Constitution) has designated the High Court Trial Division "a court of general

28

jurisdiction with the power to hear any matter not otherwise provided for by statute."  ASC § 3.0208; *see also Clifton v. Voyager, Inc*. 29 Am. Samoa 2d 80, 86 (1995) (stating that the High Court is a court of general jurisdiction even though "there are areas of jurisdiction which are denied this court by federal statute"); *Purcell v. Schirmer*, 6 Am. Samoa 3d 287, 293 (2002) (stating that the Fono's designating the Trial Division a court of general jurisdiction is "a valid exercise of its power to define the High Court's jurisdiction"); *Meaamaile*, 550 F. Supp. at 1237 ("Congress may properly delegate plenary authority, including judicial authority, to govern a territory to the Executive.  That is exactly what Congress has done in the case of American Samoa."); 13 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3508 (3d ed. 2008) (stating that the High Court exercises jurisdiction "of virtually the same scope as state courts of general jurisdiction").  Given this history and the unique status of the judicial system within American Samoa, the court concludes that for the purposes of Rule 4(k)(2), the High Court Trial Division is a court of general jurisdiction.

The court next turns to the question of whether the High Court has personal and subject-matter jurisdiction to hear the federal claim at issue: an ESA citizen suit against Defendants.  The High Court plainly has general personal jurisdiction over Defendants, residents of American Samoa whose alleged conduct

occurred in American Samoa.  *See* ASC § 3.0103(a)–(b); *Pene v. Bank of Hawaii*, 19 Am. Samoa 2d 52 (1991).

As for subject matter jurisdiction, the Supreme Court has "consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims under the laws of the United States."  *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) (citing *Tafflin*, 493 U.S. at 458).  To "give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction."  *Id.* n.3 ("illustrat[ing] this distinction" with the Employee Retirement Act of 1974 that states "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter").[13]

Applying these principles, *Yellow Freight* held that state courts have jurisdiction to hear claims under Title VII of the Civil Rights Act of 1964 where Congress provided that district courts "shall have jurisdiction of actions brought under this subchapter."  *Id.* at 823.  The Court determined that Title VII "contains

---

[13] *See also Tafflin,* 493 U.S. at 459–60 (stating RICO contains no "explicit statutory directive" divesting state courts of jurisdiction to hear RICO claims; therefore, state courts have jurisdiction absent an "unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests"); *Garrett v. Circuit City Stores*, *Inc.*, 449 F.3d 672, 678 (5th Cir. 2006) ("Section 4323(b)(3) provides that 'the district courts of the United States shall have jurisdiction of the action' against a private employer.  This language, however, neither guarantees a right to a federal court trial nor forbids arbitration as an alternate forum.").

no language that expressly confers jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction." *Id*. And the ESA contains nearly identical lanague as Title VII, providing that district courts "shall have jurisdiction over any actions arising under this chapter." 16 U.S.C. § 1540(c). Applying *Yellow Freight,* the court concludes that the ESA does not divest American Samoa territorial courts with the power to hear ESA claims; the ESA neither strips state courts of jurisdiction nor assigns exclusive jurisdiction to district courts.

For purposes of Rule 4(k)(2), the High Court Trial Division is a "state court" of general jurisdiction, and the ESA claim brought in this case could be heard by the High Court Trial Division. As such, the second prong—that "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction"—is not satisfied in this case, meaning that this court lacks personal jurisdiction over Defendants under Rule 4(k)(2).[14] *Ayla*, 11 F.4th at 978. Under

---

[14] There is yet another wrinkle in this analysis: the liminal status of the unincorporated territories, which calls into question whether the High Court of American Samoa (or indeed, any territorial court) can properly be considered a forum within the United States for the purposes of Rule 4(k)(2)'s analysis. *See Touchcom*, 574 F.3d at 1414 (explaining that Rule 4(k)(2) was adopted to ensure that federal claims can be adjudicated in the United States if sufficient national contacts exist). In the Insular Cases, the Supreme Court announced that the unincorporated territories are not incorporated into the United States, but are instead "merely appurtenant" to the United States as "possession[s]." *Downes*, 182 U.S. at 341–42 ("[W]hile in an international sense Porto Rico was not a foreign country, since it was subject to the sovereignty of and was owned by the United States, it was foreign to the United States in a domestic sense, because the island had not been incorporated into the United States, but was merely appurtenant thereto as a possession."). In short, territories remain outside the body politic of the nation; they "belong[] to" but expressly are "not a part of" the United States. *See id.* at 287.

(continued . . .)

the circumstances presented in this case, this court cannot exercise personal

jurisdiction over the ASPA and ASTCA Defendants, under either the Hawaii long-

arm statute or Rule 4(k)(2).[15]   Accordingly, the court GRANTS the ASPA and

ASTCA Defendants' Motions to Dismiss for lack of personal jurisdiction, without

leave to amend.

## B.    Forum Non Conveniens

Next, the court turns to whether dismissal is appropriate under the

doctrine of forum non conveniens, under which all three sets of Defendants move

---

But it is equally well-settled that territories are subject to U.S. sovereignty—and to the jurisdiction of the United States.  *See, e.g.*, *id.* at 366 (Fuller, C.J., dissenting) (explaining that although unincorporated territories are not "within the jurisdiction of any particular state" they are "within the power and jurisdiction of the United States"); *Jones v. United States*, 137 U.S. 202, 212 (1890) (holding that federal courts may exercise jurisdiction over crimes arising on island territories "appertaining" to the United States); *Fitisemanu*, 1 F.4th at 875 n.15 ("[T]he statutory and practical control exercised by the United States over American Samoa render American Samoa subject to the jurisdiction of the United States.").  Thus, for the purposes of Rule 4(k)(2)—which concerns the jurisdictional reach of federal courts—it is appropriate to consider American Samoa "part" of the nation.  Most other courts reaching this issue agree.  *See, e.g.*, *Cordice v. LIAT Airlines*, 2015 WL 5579868, at *6 (E.D.N.Y. Sept. 22, 2015) (counting contacts with Puerto Rico under Rule 4(k)(2)); *Quokka Sports, Inc. v. Cup Int'l, Ltd.*, 99 F. Supp. 2d 1105, 1112 (N.D. Cal. 1999) (same); *Western Equities, Ltd. v. Hanseatic, Ltd.*, 956 F. Supp. 1232, 1236 (D.V.I. 1997) (counting contacts with Virgin Islands under Rule 4(k)(2)); *but see Faalele v. Singapore Techs. Marine, Ltd.*, 2016 WL 6330585, at *6 (S.D. Cal. Jan. 28, 2016) (stating that the plaintiff "failed to provide the Court with any authority holding that a personal jurisdiction analysis under Rule 4(k)(2) may include U.S. territories like American Samoa").

[15]  Because the Rule 4(k)(2) analysis fails at the second prong, the court does not reach the due process analysis.

for dismissal.[16]  After careful consideration, the court determines that this is one of those unique and rare cases where dismissal is warranted under the doctrine.

Forum non conveniens is a traditional common law doctrine, which has largely been codified by Congress under 28 U.S.C. § 1404 (a).  *See* § 1404 (Historical and Revision Notes) (noting § 1404(a) "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper.").  Section 1404(a) is "merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013)*; see also Sinochem*, 549 U.S. at 430 ("For the federal court system, Congress has codified the doctrine . . . .").

---

[16]  The Bluesky Defendants did not invoke a lack of personal jurisdiction, effectively waiving the argument.  *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[P]ersonal jurisdiction requirement is a waivable right[.]"); *Marisco, Ltd. v. Am. Samoa Gov't*, 889 F. Supp. 2d 1244, 1248–49 (D. Haw. 2012) (finding defendant had consented to personal jurisdiction by filing an answer and failing to raise the lack of personal jurisdiction in a Rule 12 motion).  Normally, "once a court determines that jurisdiction is lacking, it can proceed no further and must dismiss the case on that account.  In that scenario 'forum non conveniens can never apply.'"  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 434 (2007) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)).  Here, however, because the court's ruling regarding a lack of personal jurisdiction does not apply to the Bluesky Defendants, the court proceeds to analyze the arguments regarding forum non conveniens as to all Defendants.

There are situations, however, when transfer under § 1404(a) is not possible, and the common-law doctrine of forum non conveniens may be applied. The Supreme Court has held that the "common-law doctrine of forum non conveniens has continuing application [in federal courts] only in cases where the alternative forum is abroad and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Id.* (internal citations and quotation marks omitted) (citing 14D Charles A. Wright et al., *Federal Practice and Procedure* § 3828 at 620–623 & nn. 9–10 (3d ed. 2007). As another court within this district previously found:

> The same grounds which have led courts to hold that federal courts retain the power to dismiss suits which should have been brought in *state* or *foreign* courts apply with equal force to suits which should have been brought in *territorial* courts. Thus, this court finds that the adoption of 28 U.S.C. § 1404(a) did not diminish the power of federal courts to dismiss cases that cannot properly be transferred to another federal court and that should have been or have been brought in territorial courts. This is such a case.

*Meaamaile,* 550 F. Supp. at 1232.

## 1.   *Forum Non Conveniens Test*

Defendants bear the burden of showing that "exceptional circumstances" warrant dismissal on forum non conveniens grounds. *See Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1224 (9th Cir. 2011); *Ioannidis/Riga v. M/V Sea Concert*, 132 F. Supp. 2d 847, 861 (D. Or. 2001);

*Magellan Real Estate, Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1148 (D. Ariz. 2000).  Specifically, "[t]o prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano,* 643 F.3d at 1224.  "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy."  *Id.* at 1225.

Further, when a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981).  A foreign plaintiff's choice is entitled to less deference, but "less deference is not the same thing as no deference."  *Carijano*, 643 F.3d at 1227.  For a U.S. citizen's choice of forum to be rejected, the private and public interest factors must "strongly favor trial in a foreign country."  *Lueck*, 236 F.3d at 1145.[17]

The private interest factors include: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of hostile witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; [and] (4) all other factors that render

---

[17]  Plaintiff Faʻamuli claims that he is a U.S. citizen.  *See* ECF No. 213 at PageID. 2397. Regardless of whether any of the Plaintiffs are U.S. citizens or U.S. nationals, the court applies the forum non conveniens test as if the Plaintiffs were in fact U.S. citizens.  As set forth below, the court determines that the public and private interest factors "strongly favor trial" in American Samoa.  *See id.*

trial of the case expeditious and inexpensive." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1078 (9th Cir. 2015) (internal quotation marks omitted).[18]

The public interest factors include: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (3) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law." *Id*.[19]

### 2.     *Plaintiffs Have an Adequate Alternative Forum*

Although a "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery," the alternate forum that offers a "clearly unsatisfactory" remedy is inadequate. *Piper Aircraft*, 454 U.S. at 250, 254 n.22;

---

[18] Courts sometimes articulate the private interest test somewhat differently. For example, *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (internal quotation marks omitted) lists the private factors to include:
> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

[19] *Ayco Farms*, 862 F.3d at 950, lists the public factors to include "(1) the local interest of [the] lawsuit; (2) the court's familiarity with governing law; (3) [the] burden on local courts and juries; (4) [the amount of] congestion in the court; and (5) the costs of resolving a dispute unrelated to [the] forum."

*see also Lueck*, 236 F.3d at 1144 ("The effect of *Piper Aircraft* is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong.").  Here, all Defendants are clearly amenable to process in American Samoa.  Further, as set forth above, the High Court of American Samoa has subject matter jurisdiction over an ESA citizen suit, and offers Plaintiffs a full remedy.

During the hearing on the various motions before the court, Plaintiffs argued that the High Court is an inadequate forum, alleging judicial misconduct in the forum state, and the "ineptitude" of the High Court's judges to hear federal claims arising out of U.S. law.  This court, however, has already reviewed issues of the High Court judicial competency in relation to an earlier case filed by the same Plaintiffs and the court will not relitigate those issues now.  *See, e.g.*, *Kruse*, 576 F. Supp. 3d at 781 n.33.  The court repeats—there was no judicial misconduct, only over-the-top conspiracy theories by Plaintiffs.  The High Court of American Samoa often deals with issues of federal law and is the most adequate forum to ensure the enforceability of any judgment that may result from this controversy. Should Plaintiffs' ESA claim prevail, the High Court has the tools to provide them with an adequate remedy.

### 3.    The Private Factors Weigh in Favor of Dismissal

All relevant private factors weigh heavily against hearing this case in the District of Hawaii.  First, the relative ease of access to sources of proof strongly favors American Samoa.  None of the complained-about events occurred in Hawaii, and all the evidence is located in American Samoa, not Hawaii.  In fact, *all* of the individual Plaintiffs and *all* of the remaining Defendants—including 13 individual Defendants sued in their individual and official capacities—reside in American Samoa.  None reside in Hawaii.  Requiring those individual Defendants to attend a trial in the District of Hawaii would be overly burdensome.[20]  Holding trial in American Samoa is—without question—more convenient to both the Plaintiffs and the Defendants.[21]  Further, this court's subpoena power would not extend to witnesses in American Samoa, and thus American Samoa is more convenient for the compulsory process for attendance of any hostile witnesses.[22]

---

[20]  A defendant in a civil case has a due process right "to be present in the courtroom and to meaningfully participate in the process unless their exclusion furthers important governmental interests."  *Lane v. Tennessee*, 315 F.3d 680, 682 (6th Cir. 2003); *see also Muhammad v. Ct. of Common Pleas of Allegheny Cnty., Pa*., 483 F. App'x 759, 763 (3d Cir. 2012).  And when a defendant is sued in an individual capacity (as 13 Defendants are in this case), the need to meaningfully participate in trial certainly takes on greater urgency.

[21]  Although the court has held pretrial hearings in this case remotely, a trial would be conducted in court.  And although the court might permit some remote testimony, for the most part, the court would require witnesses to appear in court for trial.

[22]  Under Federal Rule of Civil Procedure 45(c)(1), a subpoena may command presence at trial of a person within 100 miles of where that person resides, or, in some cases, if the person lives in the state where the trial will be conducted.  Here, all the Defendants reside in American Samoa, and the court is unaware of any witnesses from Hawaii who would be called to trial.

And, given its familiarity with this case, the court is confident that this is one of those few and unique cases where the court would want to view the premises in person.  Even though the Plaintiffs could seek to admit photos or videos at trial, an in-person site visit would greatly enhance the court's understanding of the beach conditions, including the extent of the remaining debris in the Alega Marine Preserve (a matter clearly in dispute).  In short, the private factors weigh heavily in favor of dismissal.

### 4.    The Public Factors Weigh in Favor of Dismissal

The last three public factors also weigh in favor of dismissal.[23]  There is no "local" interest in having this case tried in the District of Hawaii.  Conversely, there is certainly a great interest in have this localized controversy heard in American Samoa.  Although Plaintiffs allege a violation of the ESA, they also seek $4,000,000 in compensatory damages and $4,000,000 in punitive damages under territorial law.  ECF No. 1.

Further, the ESA can only provide Plaintiffs equitable relief, not damages.  *See* 16 U.S.C. § 1540(g)(1)(A); *Loggerhead Turtle v. Cnty. Council of*

---

[23]  The court determines that the factor of court congestion weighs neutrally.  Although the court has several complex, multi-defendant criminal cases pending that could disrupt a trial date in this matter, the court is confident that it could find time to try the case in due course.

The factor focusing on the imposition of jury duty is also not applicable, as this matter is set for trial before the court (not a jury).  *See* ECF No. 1 at PageID.2.  *See Kufahl v. Spaulding Decon Indus., Corp.*, 2019 WL 5424791, at *3 (D. Kan. Oct. 23, 2019) ("Defendants properly disregard this burden [on a jury] because the Franchise Agreement waives a jury trial.  Thus, jury duty is a non-factor.").

*Volusia Cnty., Fla.*, 307 F.3d 1318, 1326 (11th Cir. 2002) ("[C]itizen suits under the ESA may *only* seek equitable relief; damages are not available.").  And should Plaintiffs prevail on the ESA claim, the High Court would be in a much better position to determine the scope of the equitable relief and to oversee compliance with any court order.  For instance, any claim of a breach of an injunction may require a site visit, which is obviously a far simpler task for a judge residing in American Samoa.

There are also potentially complex issues of standing that relate to customary America Samoa land rights that clearly make America Samoa courts better suited to hear this case.  The briefing before the court has revealed an underlying dipute regarding the ownership of the Alega land at issue, and thus whether Plaintiffs have standing to raise their current claims.  *See* ECF No. 202-1 at PageID.2073.[24]  Plaintiff Fa'amuli claims that he is the authorized representative for communal land in Alega Village, ECF No. 1 at PageID.6, and thus has standing.  ECF No. 213 at PageID.2383-89.  The ASPA Defendants cite American Samoa caselaw suggesting that the Alega land in question was partitioned into

---

[24]  Land tenure in American Samoa is largely governed by indigenous Samoan law rather than American property law principles. *See, e.g.*, *Fitisemanu*, 1 F.4th at 866.  Samoan land tenure law is part of fa'a Samoa—the Samoan way of life.  *Id.*  Land ownership is predominantly communal, with more than 90 percent of American Samoan land belonging to 'aiga, or large, extended family units comprising people related by blood, marriage, or adoption. *Id.*  Each 'aiga shares communally owned family land and is led by a matai (chief).  *Id.*

individual lots to the heirs of Taʻape Faʻamuli.  ECF No. 202-1 at PageID. 2073-75.

        This land title dispute—which may ultimately be relevant to standing—is the very sort of dispute this court is ill-equipped to handle.  In fact, during preliminary proceedings in a related case filed in American Samoa, the High Court judge recognized this "communal" vs. "individually owned" issue, and found that if the land is communal, "then the pre-trial proceedings before the Office of Samoan Affairs ('OSA'), as mandated by A.S.C.A. § 43.0302, is a prerequisite to our assertion of jurisdiction at trial on the merits."  ECF No. 213-3 at PageID.2408.  The court concluded: "The parties are accordingly cautioned that OSA proceedings mandated by A.S.C.A. § 43.0302 are clearly indicated in this dispute" and a certificate of irreconcilable dispute from the OSA must be filed with the court "before this Court will assert subject matter jurisdciton at trial on the merits."  *Id*. at PageID. 2411.[25]  These factors demonstrate why American Samoa, not the District of Hawaii, has a compelling interest in having this matter tried in a forum familiar with the laws that govern the action.

---

[25]  To further complicate matters, Plaintiffs request "a Declaration of Rights that the SaʻO of Alega who is currently Plaintiff Chief Faamuli Pete Faamuli has valid existing rights to land and water in Alega."  ECF No. 1 at PageID.47.  This request for relief involves similarly complicated matters of Amerian Samoa land rights that should be determined locally, not in the this court.

Thus, the applicable public factors weigh heavily in favor of dismissal.  And together, the private and public interests "strongly favor trial" in America Samoa.  *See Lueck*, 236 F.3d at 1145.  Accordingly, the court GRANTS Defendants' Motions to Dismiss based on the doctrine of forum non conveniens.

## V.  <u>CONCLUSION</u>

The court GRANTS the ASPA and ASTCA Motions to Dismiss, ECF Nos. 202 & 205, based on a lack of personal jurisdiction.  And the court grants all Defendants' Motions to Dismiss, ECF Nos. 202, 205 & 206, based on forum non conveniens.  As a result, Plaintiffs' Renewed Motions for Temporary Restraining Orders, ECF Nos. 199, 200, and 201, are DENIED.  Similarly, Bluesky's Motion for Summary Judgment, ECF No. 203, is DENIED at moot.  And the clerk of court is directed to close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 16, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Hueter, et al. v. AST Telecomm LLC, et al.*, Civ. No. 21-00377 JMS-KJM, Order Granting Defendants' Motions To Dismiss, ECF No. 202, 205 & 206